O

1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  CHANNELL COMMERCIAL      )    Case No. EDCV 07-1228-VAP
    CORPORATION, a Delaware  )    (JCRx)
12  corporation,             )
                             )    **[Motion filed on March 3,**
13              Plaintiff,    )    **2008]**
                             )
14       v.                  )    **ORDER DENYING PLAINTIFF'S**
                             )    **"MOTION TO ENFORCE PERMANENT**
15  BROADBAND PRODUCTS,      )    **INJUNCTION/SETTLEMENT**
    INC., a California       )    **AGREEMENT"**
16  corporation,             )
                             )
17              Defendant.    )
    _____)
18

19       Plaintiff Channell Commercial Corporation's "Motion

20  to Enforce Permanent Injunction/Settlement Agreement"

21  came before this Court for hearing on April 15, 2008.

22  After reviewing and considering all papers filed in

23  support of, and in opposition to, the Motion, as well as

24  the arguments advanced by counsel at the hearing, the

25  Court DENIES Plaintiff's Motion.

26  ///

27  ///

28

1                          **I. BACKGROUND**

2  **A.   Procedural Background**

3        Plaintiff Channell Commercial Corporation

4  ("Channell") filed the Complaint against Defendant

5  Broadband Products, Inc. ("Broadband"), on September 25,

6  2007.   The Complaint alleged infringement of U.S. Patent

7  No. D479,507S (the "'507 Patent"), which claims the

8  ornamental design for the connector depicted and

9  described in the patent.

10

11       By stipulated Orders dated November 19, 2007, the

12 Court entered a permanent injunction and dismissed the

13 action pursuant to a settlement agreement ("Agreement")

14 entered into by the parties.   In the Stipulated Order of

15 Dismissal, the Court retained jurisdiction to enforce the

16 terms of the Stipulated Permanent Injunction and the

17 parties' Agreement.

18

19       On March 3, 2008, Plaintiff filed a "Motion to

20 Enforce Permanent Injunction/Settlement Agreement"

21 ("Motion" or "Mot.") along with the declarations of Bryan

22 J. Sinclair ("Sinclair Decl.") and Gerald-Leo Shimirak

23 ("Shimirak Decl.").   Defendant filed Opposition on March

24 31, 2008, along with "Evidentiary Objections to, and

25 Motion to Strike, Portions of Declaration of Gerald-Leo

26 Shimirak" and the declarations of Mark A. Engler and

27 Spencer Mackay.   Plaintiff filed its Reply on April 7,

28

1  2008, along with "Evidentiary Objections to Portions of

2  the Declarations of Spencer Mackay and Mark Engler," the

3  Declaration of Bryan J. Sinclair, and a "Reply to

4  Defendant's Objections to, and Motion to Strike, Portions

5  of Declaration of Gerald-Leo Shimirak."[1]

6

7  **B.   Factual Background**

8       Plaintiff's Complaint alleged that it is a "global

9  designer and manufacturer of equipment supplied to

10  telephone companies and cable television network

11  operators."  (Compl. ¶ 6.)  Plaintiff owns the rights to

12  the '507 Patent, which claims "the ornamental design for

13  a connector," as described in the patent and known as the

14  "Mini-Rocker."  (Id. ¶¶ 7-8; Shimirak Decl. ¶ 4.)  At the

15  hearing on the Motion, Plaintiff's counsel indicated that

16  the connector is used for wiring telephone and other

17  communication networks.

18

19       The Complaint alleged that Defendant "has made, used,

20  imported, offered for sale, and/or sold products that

21  infringe the '507 Patent."  (Compl. ¶ 11.)  The Complaint

22  also alleged that Defendant "induced others to infringe

23  the '507 Patent by encouraging and promoting the use,

24  manufacture, importation, sale, and/or offer for sale by

25

26       [1]The parties' respective objections are made to
evidence that is not material to resolution of the Motion

27  and the Court therefore declines to rule on them.   It
denies as moot Defendant's Motion to strike portions of

28  Mr. Shimirak's declaration.

1  others of products that infringe the '507 Patent."  (Id.

2  ¶ 12.)  Plaintiff attached a copy of the '507 Patent as

3  Exhibit A to the Complaint.  (Id. ¶ 7 & Ex. A.²)

4

5      On November 19, 2007, before Defendant filed its

6  answer, the Court entered an Order and Stipulated

7  Permanent Injunction (Docket No. 7) ("Permanent

8  Injunction") and a Stipulated Order of Dismissal (Docket

9  No. 8) ("Dismissal Order"), pursuant to the parties'

10  Agreement.  The Permanent Injunction ordered Defendant

11  Broadband, inter alia, to:

12      change the ornamental design, via new molds or

13      other methods and in a manner that Broadband

14      deems does not infringe the '507 Patent, of

15      all terminal bridging products sold or offered

16      for sale in the United States embodying the

17      ornamental design of the '507 Patent within

18      thirty (30) days of the execution of this

19      Order.

20  (Permanent Injunction at 2.)  The Permanent Injunction

21  further provided that Defendant Broadband "will not be

22  precluded from continuing to market and sell bridging

23  terminal products of a different ornamental design from

24  the '507 Patent."  (Id. at 3.)  The Court retained

25  jurisdiction to enforce the terms of the Permanent

26  _____

27      ²After inadvertently omitting Exhibit A when it filed
   the Complaint, Plaintiff filed a Notice of Errata on
28  October 10, 2007, attaching the exhibit.

1  Injunction and the parties' Agreement.  (Dismissal Order

2  at 2.)

3

4      The Agreement included language similar to that

5  contained in the Permanent Injunction.  [See Sinclair

6  Decl. Ex. A (hereinafter, "Agmt.").]  Defendant Broadband

7  agreed that within 30 days of the Agreement's effective

8  date, it would:

9      •    refrain from making, using, selling, importing,

10          or offering for sale "any products embodying the

11          ornamental designs of the '507 Patent"; and

12     •    "change via new molds or other methods and in a

13          manner that Broadband deems does not infringe

14          the '507 Patent, the ornamental design of all

15          terminal bridging products sold or offered for

16          sale in the United States."

17 (Agmt. at 1-2.)  Broadband also agreed to provide

18 Plaintiff's counsel with samples of its redesigned

19 products within 10 days of execution of the Agreement.

20 (Id. at 2.)  Any "new ornamental design" of Defendant's

21 product was not subject to the Agreement or the Permanent

22 Injunction, "so long as such modules or products do not

23 embody the ornamental designs of the '507 Patent, such

24 determination to be made by a factual determination in

25 any judicial action."  (Id. at 2-3.)

26 ///

27 ///

28

1    On December 11, 2007, Defendant forwarded a drawing

2 of its redesigned product to Plaintiff.  (Sinclair Decl.

3 ¶ 3.)  On December 19, 2007, Defendant sent to

4 Plaintiff's counsel a certificate of compliance, as

5 required by the Agreement.  (Sinclair Decl. ¶ 4.)  In

6 January of 2008, Plaintiff's counsel received a sample of

7 Defendant's redesigned product.  (Sinclair Decl. ¶ 5.)

8 Plaintiff now argues that Defendant's redesigned product

9 still infringes the '507 Patent.  (Mot. at 3:7-8.)

10

11                    **II. LEGAL STANDARD**

12    A district court has jurisdiction to enforce the

13 terms of a settlement agreement where it has retained

14 jurisdiction to do so in an order of dismissal.  <u>Kokkonen</u>

15 <u>v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381-82

16 (1994).  Settlement agreements are interpreted according

17 to the principles of contract law.  <u>Jeff D. v. Andrus</u>,

18 899 F.2d 753, 759 (9th Cir. 1990).

19

20                    **III. DISCUSSION**

21    Plaintiff's Motion argues that Defendant's

22 "purportedly redesigned terminal bridging product still

23 infringes the ornamental designs depicted in the '507

24 Patent."  (Mot. at 3:7-8.)  The Motion requests (1) a

25 ruling that Defendant is in breach of the parties'

26 Agreement and the Court's Permanent Injunction, and (2)

27 ///

28

                                6

1 entry of a modified injunction prohibiting the sale of

2 Defendant's product.  (Mot. at 13:9-14.)

3

4 **A.   Interpretation of Settlement Agreement**

5      As an initial matter, the Court addresses the

6 parties' disagreement about Defendant's obligations under

7 the Agreement.  Defendant asserts that the Agreement

8 obligated it only "to change its ornamental design and

9 cease use of its prior design which embodied the

10 ornamental design of the '507 Patent."  (Opp'n at 2:16-

11 19.)  The Agreement further provided that Defendant would

12 change the design of its product "in a manner that

13 [Defendant] Broadband deems does not infringe the '507

14 Patent."  (Opp'n at 2:24-27.)  According to Defendant, it

15 has changed its product so that it no longer "embodies"

16 the patented ornamental design, and it has deemed its

17 redesigned product not to infringe the '507 Patent.

18 Defendant therefore argues it is not in breach of the

19 Agreement.  (Opp'n at 2:21-2:28.)  In doing so, Defendant

20 makes a distinction between the Agreement's requirement

21 that its product no longer "embody" the patented design,

22 and the Motion's claim that the Agreement has been

23 breached because Defendant's redesigned product

24 "infringes" the '507 Patent.  (Opp'n at 3:1-3:6.)

25

26      The reading of the Agreement advanced by Defendant

27 emphasizes a distinction without a difference.  The

28

1 Agreement's use of the phrase "embodying the ornamental

2 designs of the '507 Patent" is synonymous with

3 infringement of a design patent under 35 U.S.C. section

4 289.   Courts have found a design patent to be infringed

5 "by the unauthorized manufacture, use, or sale of the

6 article <u>embodying the patented design</u> or any colorable

7 imitation thereof."   <u>Arminak and Assocs., Inc. v.</u>

8 <u>Saint-Gobain Calmar, Inc.</u>, 501 F.3d 1314, 1319 (Fed. Cir.

9 2007) (quotation and citation osmitted) (emphasis added).

10 Furthermore, it would make little sense for Plaintiff to

11 have entered into a settlement agreement allowing

12 Defendant to continue to infringe the '507 Patent, so

13 long as Defendant deemed itself not to be infringing the

14 patent.   Rather, the provision allowing Defendant to

15 determine that its redesigned product did not infringe

16 the '507 Patent is interpreted properly as a procedural

17 mechanism for determining compliance with the Agreement.

18

19      The appropriate inquiry therefore is whether

20 Defendant's redesigned product breaches the Agreement by

21 infringing the '507 Patent.

22

23 **B.   Infringement Analysis**

24      Determining whether an accused product infringes a

25 design patent first requires construction of the patent's

26 claim, followed by a comparison of the construed claim to

27 ///

28

1   the accused design.  <u>Elmer v. ICC Fabricating, Inc.</u>, 67

2   F.3d 1571, 1577 (Fed. Cir. 1995).

3

4        **1.   Construction of the '507 Patent**

5        "Design patents typically are claimed as shown in

6   drawings. . . .   The scope of the claim of a patented

7   design encompasses its visual appearance as a whole, and

8   in particular the visual impression it creates."

9   <u>Arminak</u>, 501 F.3d at 1319-20 (internal quotations and

10  citations omitted).  Where a design includes both

11  functional and non-functional elements, "the scope of the

12  claim must be construed in order to identify the

13  non-functional aspects of the design."  <u>OddzOn Prods.,</u>

14  <u>Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396, 1405 (Fed. Cir.

15  1997) (citing <u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186,

16  1188 (Fed. Cir. 1988)).  "An aspect is functional if it

17  is essential to the use or purpose of the article or if

18  it affects the cost or quality of the article."  <u>Amini</u>

19  <u>Innovation Corp. v. Anthony Cal., Inc.</u>, 439 F.3d 1365,

20  1371 (Fed. Cir. 2006) (quoting <u>Inwood Labs., Inc. v. Ives</u>

21  <u>Labs., Inc.</u>, 456 U.S. 844, 851 (1982)) (internal

22  quotation omitted).

23

24       Though Defendant argues that Plaintiff has not

25  attempted to construe the '507 Patent, Plaintiff in fact

26  has offered the following construction:  "an ornamental

27  connector design claiming a curved bill protruding over

28

1  two frontally positioned wire connector ports."  (Mot. at

2  10:11-12.)  The '507 Patent itself claims "[t]he

3  ornamental design for a connector, as shown and

4  described" and includes seven illustrations of the

5  connector from different perspectives.  [Shimirak Decl.

6  Ex. A ('507 Patent).]  Channell describes these design

7  features as "improv[ing] the opening function of the

8  connector, allowing wires to enter the connector's wire

9  ports."  (Mot. at 3:16-17.)  The curbed bill protruding

10  over the connector ports, which Channell refers to as the

11  "baseball cap" feature, "conveys the idea or image to the

12  user of how the connector may be opened" and, according

13  to Channell, has an "intuitive" appearance.  (Reply at

14  7:9-13.)  Channell also asserts that the location of the

15  round wire connector ports on the front of its design is

16  "purely ornamental."  (Reply at 7:20-21.)

17

18      The Court finds, however, that Plaintiff's proposed

19  claim construction emphasizes functional features of the

20  '507 Patent without addressing the Mini-Rocker's "visual

21  appearance as a whole" or the "visual impression it

22  creates."  Arminak, 501 F.3d at 1319-20.  By Channell's

23  own admission, the "baseball cap" feature conveys to the

24  user how the connector may be opened.  (Reply at 7:9-12.)

25  Channell further describes the connector ports as

26  "hav[ing] a function of receiving telecommunication wires

27  into the connector."  (Reply at 18-19.)

28

1    As the Federal Circuit has noted, "Many well-

2 constructed articles of manufacture whose configurations

3 are dictated solely by function are pleasing to look upon

4 . . . [b]ut it has long been settled that when a

5 configuration is the result of functional considerations

6 only, the resulting design is not patentable as an

7 ornamental design for the simple reason that it is not

8 'ornamental' -- was not created for the purpose of

9 ornamenting."  Lee, 838 F.2d at 1188 (quoting In re

10 Carletti, 328 F.2d 1020, 1022 (CCPA 1964)).  While

11 Plaintiff cites case law holding that a design including

12 functional features properly may be the subject of a

13 design patent, the design must have an "unobvious

14 appearance distinct from that dictated solely by

15 functional considerations."  Reply at 6:22-28; Lee, 838

16 F.2d at 1188.  Here, Plaintiff fails to articulate the

17 ornamental features of the Mini-Rocker connector other

18 than those dictated by functional considerations.

19

20    After reviewing the '507 Patent and its drawings, the

21 Court construes the '507 Patent as follows:  The '507

22 Patent discloses an ornamental design for a wire

23 connector.  From the front and rear, the connector has a

24 boxy shape with thin legs extending from the bottom.

25 From the sides, the connector is "T"-shaped, with a

26 narrow, vertical portion and a thicker, horizontal

27 portion.  ([Shimirak Decl. Ex. A ('507 Patent) at 5,

28

11

1  Figures 2, 3.)  The connector has a gently curved lip

2  protruding above two exposed connector ports on its

3  front.  (<u>Id.</u> 4-5 & Figure 1.)

4

5  **2.   Comparison of claims to accused design**

6  Having construed the '507 Patent's claim, the Court

7  next compares the claim to Defendant's accused design.

8  When making such a comparison, the Court applies two

9  separate tests; both must be satisfied to support a

10  finding of infringement.

11

12  **a.   "Ordinary observer" test**

13  The "ordinary observer" test "requires an objective

14  evaluation of the question of whether a hypothetical

15  person called the 'ordinary observer' would find

16  substantial similarities between the patented design and

17  the accused design, so as to be deceived into purchasing

18  the accused design believing it is the patented design."

19  <u>Arminak</u>, 501 F.3d at 1321.  Where a design includes both

20  functional and ornamental features, "infringement occurs

21  if an ordinary person would be deceived by reason of the

22  common features in the claimed and accused designs which

23  are ornamental."  <u>Amini</u>, 439 F.3d 1365, 1371 (Fed. Cir.

24  2006) (quoting <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816,

25  825 (Fed. Cir. 1992)) (internal quotation omitted).  In

26  applying the ordinary observer test, however, a court

27  should not focus on "similarities of ornamental features

28

1 considered in isolation," but whether an ordinary

2 observer would be deceived by "similarities in the

3 overall design."  Id.  Application of the test calls for

4 a factual inquiry.  Arminak, 501 F.3d at 1321.

5

6    Depending on the market for the patented product, the

7 "ordinary observer" may be a retail buyer or an

8 industrial purchaser of component parts for manufacture.

9 Arminak, 501 F.3d at 1321.  At the hearing on the Motion,

10 the parties agreed that the "ordinary observer" in this

11 case would be a field technician engaged in wire

12 installation, rather than a retail consumer.

13

14    Here, Channell has not carried its burden of showing

15 that an "ordinary observer" would mistake the overall

16 design of the accused product with that of the '507

17 Patent.  This is in part a failure of proof, because

18 Channell has not submitted any evidence concerning

19 confusion experienced by telephone or cable wiring

20 installers when attempting to distinguish between the

21 patented and accused designs.  Channell relies instead on

22 case law holding that a trier of fact simply may compare

23 the patented design and the accused design to determine

24 whether an "ordinary observer" would be confused.  [Mot.

25 at 7 (citing Braun, Inc. v. Dynamics Corp. of Am., 975

26 F.2d 815, 819, 821 (Fed. Cir. 1992)).]

27 ///

28

1    In <u>Braun</u>, the Federal Circuit upheld a jury's finding

2  that the design patent for the plaintiff's hand-held

3  electric blender had been infringed.  975 F.2d at 821-22.

4  The court noted that a jury, being "comprised of a

5  sampling of ordinary observers, does not necessarily

6  require empirical evidence as to whether ordinary

7  observers would be deceived by an accused device's

8  design."  <u>Id.</u> at 821.  Here, by contrast, the patent at

9  issue does not involve a consumer product available for

10  retail sale, and the parties have agreed that the

11  "ordinary observer" test should be applied from the

12  perspective of a field technician.  Plaintiff's failure

13  to adduce any evidence on this issue therefore hampers

14  the Court's ability to conduct such an analysis.

15

16    Even more fundamentally, the few ornamental features

17  described in the '507 Patent's claim and its overall

18  visual appearance are likely to be distinguished easily

19  from the accused product.  In light of the narrow area of

20  protection the '507 Patent can provide, it follows that

21  there are few ornamental features the accused product

22  could copy such that the ordinary observer would be

23  deceived as a result.  For example, the Court notes that

24  the accused product does not have a "T"-shape when viewed

25  in profile. [Sinclair Decl. Ex. D (photos of accused

26  product) at 13-14.]  Instead of the vertical portion of

27  the "T"-shape featured in the '507 Patent, the accused

28

1 product has a wider, boxy top portion that is not roughly

2 symmetrical when viewed in profile.  (Id.)  While the

3 accused product does have a curved lip protruding over

4 the connector ports, unlike Plaintiff's product, the lip

5 of the accused product also has a panel attached to it at

6 a 90-degree angle that covers the wire connector ports.

7

8      Accordingly, the Court finds that Plaintiff has not

9 established that an "ordinary observer," for purposes of

10 the connectors at issue, would be deceived by the accused

11 product.

12

13          **b.   "Point of novelty" test**

14      "In applying the point of novelty test, a court

15 compares the construed claims to the accused design to

16 determine whether the accused design has 'appropriated'

17 the points of novelty from the patented design."

18 Arminak, 501 F.3d at 1324.  "[T]he accused design must

19 appropriate the novel ornamental features of the patented

20 design that distinguish it from the prior art."  Amini,

21 439 F.3d at 1371.  As with the "ordinary observer" test,

22 application of the "point of novelty" test requires a

23 factual inquiry.

24

25      Plaintiff argues that its design contains two novel

26 design features that are infringed by Defendant's design:

27 (1) a "baseball cap" design feature, resembling the bill

28

1  of a baseball cap and "protruding over the frontally

2  positioned wire connector ports such that the user can

3  easily determine how to lift the bill of the 'cap' to

4  open the connector," (Mot. at 9:11-13); and (2) the

5  placement of the wire connector ports on the front of the

6  product.   (Mot. at 9:26-27).

7

8      Defendant first argues that Plaintiff's failure to

9  submit with its moving papers the prior art references in

10 the '507 Patent's prosecution history precludes a ruling

11 in Plaintiff's favor on the point of novelty question.

12 (Opp'n at 6:6-15.)   Plaintiff has remedied this

13 deficiency by filing the prosecution history with its

14 Reply papers.

15

16     In any event, the submission of the '507 Patent's

17 prosecution history, including prior art references, does

18 not resolve the central shortcoming of Plaintiff's

19 argument.   The features that Plaintiff claims as novel

20 are unprotected, functional features of the Mini-Rocker,

21 and this conclusion is supported by Plaintiff's own

22 description of those features.   To the extent that

23 Defendant's product may share certain features with the

24 Mini-Rocker, those features are functional, such as the

25 frontal placement of the wire connectors and the use of a

26 protruding lip to open the connector.   "A device that

27 ///

28

1 | copies the utilitarian or functional features of a

2 | patented design is not an infringement unless the

3 | ornamental aspects are also copied."  <u>Lee</u>, 838 F.2d at

4 | 1188.

5 |

6 | Accordingly, the Court finds that Plaintiff has not

7 | shown infringement of ornamental features of its claimed

8 | points of novelty.

9 |

10 | Plaintiff has failed to establish infringement of the

11 | '507 Patent under both the "ordinary observer" test and

12 | the "point of novelty" test, and Defendant therefore has

13 | not breached the parties' Agreement.  Accordingly, the

14 | Court denies Plaintiff's Motion.[3]

15 |

16 | **IV. CONCLUSION**

17 | For the foregoing reasons, the Court DENIES

18 | Plaintiff's "Motion to Enforce Permanent

19 | Injunction/Settlement Agreement."

20 |

21 |

22 | Dated:  <u>August 6, 2008</u>     _____

23 | VIRGINIA A. PHILLIPS
United States District Judge

24 |

25 | _____

26 | [3]Having determined that Defendant has not breached the Agreement and that Plaintiff's Motion should be

27 | denied, the Court does not reach Defendant's argument that Plaintiff should be equitably estopped from

28 | enforcing the Agreement.